FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ SEP 07 2016 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- x
SCOTT STEPHENS,

              Plaintiff,

    -against-

TRUMP ORGANIZATION LLC,
DONALD J. TRUMP, ALAN
GARTEN, and MICHAEL D. COHEN,

              Defendants.
-------------------------------------------------- x

**MEMORANDUM & ORDER**

15 Civ. 2217 (ENV) (LB)

VITALIANO, D.J.

    Plaintiff Scott Stephens brought this action, arising under New York common law, against Trump Organization LLC, Donald J. Trump, Alan Garten, and Michael Cohen, seeking compensatory and declaratory relief on claims of defamation and tortious interference with business relations. Compl., ECF No. 1. Defendants have moved to dismiss, under Rule 12(b)(6), for failure to state a claim upon which relief might be granted. Defs. Mot., ECF No. 20. Stephens has opposed the motion, but, in the alternative, asks for leave to amend. Pl. Mem. at 17, ECF No. 23. For the reasons stated below, the motion to dismiss is granted in its entirety, plaintiff's request for leave to amend is denied, and the complaint is dismissed with prejudice.

<u>Domain Names and Cybersquatting</u>

    Lying at the core of this lawsuit are allegations of "cybersquatting," that is, the practice of procuring "the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners [or to other buyers]." *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 295 (2d Cir. 2002); *see* 15 U.S.C. § 1125(d)(1)(B)(VI). A domain name is "a unique string of characters or numbers that typically is used to designate and permit access to an Internet website." *Mattel*, 310 F.3d at 295. The



1

domain name system is administered by the Internet Corporation for Assigned Names and Numbers ("ICANN"). *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 374 n.2 (2d Cir. 2003). ICANN requires that registrants of domain names agree to the terms of the Uniform Domain-Name Dispute-Resolution Policy ("UDRP"),[1] a non-binding process for the arbitration of domain name disputes. *See Storey*, 347 F.3d at 376 n.3; *Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230, 233 (2d Cir. 2002). The World Intellectual Property Organization ("WIPO"), a specialized agency of the United Nations, is approved by ICANN to hear disputes under UDRP. *See Virtual Countries*, 300 F.3d at 233. These proceedings are governed by the Rules for Uniform Domain Name Dispute Resolution Policy ("UDRP Rules"),[2] as well as the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy ("WIPO Rules").[3]

UDRP allows a trademark holder to initiate an administrative proceeding against a squatting domain name registrant to cancel or transfer the offending domain name when

> (i) [the] domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights; and
>
> (ii) [the registrant has] no rights or legitimate interests in respect of the domain name; and

---

[1] *See* UDRP, https://www.icann.org/resources/pages/policy-2012-02-25-en (last visited Aug. 30, 2016).

[2] *See* UDRP Rules, https://www.icann.org/resources/pages/udrp-rules-2015-03-11-en (last visited Aug. 30, 2016).

[3] *See* WIPO Rules, http://www.wipo.int/amc/en/domains/supplemental/eudrp/newrules.html (last visited Aug. 30, 2016).

>   (iii) [the] domain name has been registered and is being used in bad faith.

UDRP ¶ 4(a).

Obviously, given that administrative decisions under UDRP are not binding on the courts, *see Web-adviso v. Trump*, 927 F. Supp. 2d 32, 37 n.2 (E.D.N.Y. 2013), *aff'd sub nom. Yung v. Trump*, No. 14-1554, 2016 WL 1696400 (2d Cir. Apr. 28, 2016), resort to judicial remedies is likely unavoidable where disputes continue. Indeed, UDRP specifically contemplates that parties may file an action with a court of competent jurisdiction. UDRP ¶ 4(k). The interests of trademark holders and domain name registrants are both protected by the federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106–113, § 3001 *et seq.*, a 1999 amendment to the Lanham Act. ACPA prohibits registrants from registering domain names that are identical or confusingly similar to a distinctive or famous mark, with a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). Both UDRP and ACPA, at the same time, protect registrants from "reverse domain name hijacking," or bad faith attempts "to deprive a registered domain-name holder of a domain name." UDRP ¶¶ 1, 15; *see* 15 U.S.C. § 1114(2)(D)(V)(v). ACPA provides that "[a] domain name registrant whose domain name has been suspended, disabled, or transferred under a policy [such as UDRP] may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter." 15 U.S.C. § 1114(2)(D)(V)(v); *see Gen. Media Commc'ns, Inc. v. Crazy Troll, LLC*, No. 06 Civ. 4051 (LAK) (FM), 2007 WL 102988, at *7 (S.D.N.Y. Jan. 16, 2007) (recognizing UDRP as a policy relevant to this statute).

## Background

Stephens, a citizen of California, filed this action against defendants, who are each citizens of New York, seeking damages in excess of $75,000. Compl. ¶¶ 3-20.[4] Stephens pleads that he is in the business of registering domain names in order to resell them. *Id.* ¶ 53. In 2004, he registered the domain name "trumpestates.com," and he has continuously maintained that registration. *Id.* ¶¶ 58-59.

Although not mentioned in the complaint, on March 18, 2015, Trump filed a complaint with WIPO to engineer the transfer of the "trumpestates.com" domain name from Stephens to Trump. Maron Decl. Ex. 2, ECF No. 22.[5] On May 8, 2015, the WIPO administrative panel issued a decision ordering the transfer, after finding that Trump had satisfied his burden under UDRP ¶ 4(a) to show that (1) the domain name was confusingly similar to his trademark, (2) Stephens did not have rights or legitimate interests in the domain name, and (3) the domain name was being used in bad faith to profit from the reputation of Trump's trademark. Maron Decl. Ex. 3.[6]

Stephens filed this action on April 19, 2015, before the WIPO administrative panel issued its decision. Orbiting the core matters then pending before WIPO, his claims of defamation and tortious interference with business relations were pegged to allegations that the Trump defendants "communicated false statements to at least one third party about [him] that [have] harmed his reputation." Compl. ¶ 63. These allegedly defamatory statements include those that

---

[4] Defendants have not challenged the propriety of venue in this district.

[5] Courts may take judicial notice of filings in arbitration proceedings. *See Purjes v. Plausteiner*, No. 15 Civ. 2515 (VEC), 2016 WL 552959, at *4 (S.D.N.Y. Feb. 10, 2016).

[6] The WIPO decision is publicly available at http://www.wipo.int/amc/en/domains/search/text.jsp?case=D2015-0478.

he was "violating the law" and "cybersquatting" through his registration of "trumpestates.com." *Id.* ¶¶ 64-66. He further alleges, generally, that defendants "interfered with [his] business relations with the intent to harm [him]." *Id.* ¶ 68. Additionally, Stephens prays for a declaratory judgment that he did not, by registering the domain name "trumpestates.com," violate federal trademark law, UDRP, UDRP Rules, or WIPO Rules. *Id.* ¶¶ 71-82. The complaint does not contain an ACPA claim.

Legal Standard

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Prior to filing a responsive pleading, a defendant may move to dismiss a complaint pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When considering a 12(b)(6) motion, the district court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor." *In re Thelen LLP*, 736 F.3d 213, 218 (2d Cir. 2013). However, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555. Courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The motion court may also consider matter appropriate for judicial notice application. *See* notes 5 & 7.

5

Discussion

The Trump defendants argue that each cause of action is insufficiently pled and must be dismissed. Defs. Mem., ECF No. 21; Defs. Reply Mem., ECF No. 24. Stephens, in a two way response, opposes the motion, but, in the alternative, requests leave to amend the complaint to cure any deficiencies. Pl. Mem., ECF No. 23. The parties concur that New York law governs plaintiff's common law claims. *See Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014).

I.  Defamation

To state a claim for defamation under New York law, a plaintiff must plead that "the defendant published to a third party a defamatory statement of fact that was false, was made with the applicable level of fault, and either was defamatory *per se* or caused the plaintiff special harm, so long as the statement was not protected by privilege." *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011); *see Salvatore v. Kumar*, 45 A.D.3d 560, 845 N.Y.S.2d 384, 388 (2d Dep't 2007). Although New York law would require the plaintiff to include the specific defamatory words in the complaint, the more liberal federal pleading standard is satisfied when the complaint "adequately identifies the purported communication, and [identifies] who made the communication, when it was made, and to whom it was communicated." *Radin v. Tun*, No. 12 Civ. 1393 (ARR) (VMS), 2015 WL 4645255, at *23 (E.D.N.Y. Aug. 4, 2015) (quoting *Vanderwoude v. City of New York*, No. 12 Civ. 9046 (KPF), 2014 WL 2592457, at *19 (S.D.N.Y. June 10, 2014)); *see Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (same).

Stephens's complaint fails to satisfy this clear and basic pleading standard. Specifically, it does not identify who made the allegedly defamatory statements, when they were made, and to whom they were made. *See* Compl. ¶¶ 64-65. The complaint then tersely accuses the Trump

6

defendants of making other unidentified, but purportedly defamatory, statements. *Id.* ¶ 66. Stephens's opposition brief also alludes, for the first time, to unpled allegations of defamation concerning trademark infringement and UDRP Rules. *See* Pl. Mem. 12. These claims also lack the basic specificity required under Rule 8. Moreover, Stephens's opposition makes no attempt to remedy any of the initial pleading deficiencies asserted by defendants.

Far more significantly, even had the complaint satisfied the fundamental pleading requirements, Stephens's actions would have barred his filing of a good faith defamation claim. To come right to the point, the website hosted at "trumpestates.com,"[7] in addition to advertising that this domain name is for sale for $400,000, promotes the "newsworthy" nature of his lawsuit and links to a New York Post article containing the purportedly defamatory allegations, with instructions to visitors to "[c]heck out" the article. TrumpEstates.com, *http://www.trumpestates.com* (last visited Aug. 30, 2016). In that article, the New York Post reported that "Alan Garten [a defendant here] told The Post that [the fact that Trump Estates is not a registered trademark] didn't matter 'because the Trump name is trademarked' and that Stephens was violating the law by 'cyber squatting' on the domain name." *Donald Trump fighting for domain name of future development*, New York Post, Mar. 1, 2015, *available at* http://nypost.com/2015/03/01/donald-trump-fighting-for-domain-name-of-future-development/;

---

[7] "A court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (quoting *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 (S.D.N.Y. 2006)). Screenshots of the website hosted at "trumpestates.com" and related documentation were submitted to WIPO and to this Court, without any party raising any dispute as to the website's authenticity. *See* Maron Decl. Ex. 2 at Exs. N-O, Q (ECF No. 25). Although the WIPO administrative panel ordered the domain name to be transferred to Trump, implementation of such decisions is stayed when, as in this case, WIPO is provided notice of an intervening lawsuit. UDRP ¶ 4(k); *see* Maron Decl. Ex. 3.

Maron Decl. Ex. 2 at Ex. S.[8] Thus, it appears that Stephens is using "trumpestates.com" to further disseminate the same statements which, he alleges, are harmful to his reputation. *See generally Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon*, 172 A.D.2d 254, 255, 568 N.Y.S.2d 84 (1st Dep't 1991) (New York law does not recognize "a claim for defamation where the plaintiff himself voluntarily republishes the alleged defamatory words."); *Jaliman v. Selendy*, 7 Misc. 3d 1007(A), 801 N.Y.S.2d 235 (Sup. Ct., Westchester Cnty, 2005) (same). Stated simply, words voluntarily disseminated to the world by the party alleged to be aggrieved cannot by definition be found defamatory under New York law.

II. <u>Tortious Interference With Business Relations</u>

To plausibly plead a claim for tortious interference with business relations, New York law requires a plaintiff to interpose supporting allegations that, "(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." *Scutti Enters., LLC. v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003) (quoting *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002)). The failure to identify a specific business relationship with a third party is "fatal" to a claim of tortious interference. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 115 (2d Cir. 2010); *see Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 457 (S.D.N.Y. 2014) (same). Plainly, the complaint does not identify any third party with which

---

[8] Stephens, who is obviously aware of this article, has never suggested in the course of this litigation that the statements referenced in it are the basis for his defamation claim. Surely, though, it publishes the identical or similar words that are the very root of his claim and were republished on his own website.

8

plaintiff had a business relationship, let alone with which defendants interfered and injured.[9] The motion papers seeking, alternatively, leave to amend are, similarly, stone silent. Stephens's claim of tortious interference is, therefore, fatally flawed and is dismissed.

III. <u>Declaratory Judgment</u>

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To be an actual controversy, "the dispute [must] be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and [] it [must] be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771, 166 L. Ed. 2d 604 (2007) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41, 57 S. Ct. 461, 464, 81 L. Ed. 617 (1937)). As with any pleading, the complaint must include "a

---

[9] The complaint appears to rely on alternate nomenclature when it purports to state a claim for tortious interference with contractual relations, *see* Compl. ¶ 70, but Stephens has not identified the relevant contract. *See Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 18 (2d Cir. 2014). Stephens's opposition papers also mention an unpled claim for tortious interference with prospective economic advantage, *see* Pl. Mem. 15, but the Second Circuit has explained that this is simply another term for a claim for tortious interference with business relations. *Compare* Pl. Mem. 15 *with 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). The pleading standards, the fatal flaw in plaintiff's pleading, and the resulting dismissal would all be the same.

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Stephens is in pursuit of blanket declarations that he has not violated federal trademark law, UDRP, UDRP Rules, or WIPO Rules by registering the domain name "trumpestates.com," without identifying any specific statutes, policy provisions, or rules that are in actual contention, nor the facts that would entitle him to relief. At minimum, certainly, these sweeping requests violate Rule 8 because they do not "give [defendants] fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). Instead, the pleading would require defendants to guess the provision of law or policy that might be in dispute.

Plaintiff, in the context of this motion, suggests his request for declaratory judgment is made in response to the WIPO decision, pursuant to ACPA's reverse domain name hijacking provision, 15 U.S.C. § 1114(2)(D)(V)(v). *See* Pl. Mem. 17. Of course, the complaint, which predates the WIPO decision, does not contain any claim asserted under ACPA. Notwithstanding, although APCA contemplates declaratory actions that the registration of a particular domain name "is not unlawful under this chapter," 15 U.S.C. § 1114(2)(D)(V)(v), Stephens has not pled sufficient facts to support a finding that such a claim has been plausibly pled.

As discussed above, ACPA's provision against cybersquatting prohibits the registration of domain names that are confusingly similar to famous or distinctive marks. 15 U.S.C. § 1125(d)(1). Stephens alleges that the phrases "trumpestates," "trump estates," and "trumpestates.com" have not been trademarked. Compl. ¶¶ 72-74. But, ACPA requires only confusing similarity, not complete identity with an existing trademark. 15 U.S.C. § 1125(d)(1)(A)(ii)(I); *see Web-adviso*, 927 F. Supp. 2d at 41 (the domain names

10

"trumpbeijing.com" and "trumpindia.com," were confusingly similar to the TRUMP® mark). Moreover, Stephens does not offer any factual allegations that he acted in good faith when he registered the cybersquatting domain name. Instead, Stephens actually admits that his business is the reselling of domain names,[10] and ACPA recognizes, as an indication of bad faith, that the registrant offered "to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services." 15 U.S.C. § 1125(d)(1)(B)(VI). Thus, the pleadings are insufficient to state a claim for declaratory relief under ACPA. The same deficiencies would arise in relation to UDRP, which provides for the transfer of confusingly similar domain names registered in bad faith. UDRP. ¶ 4(a).

IV.  Leave to Amend

Finally, Stephens requests permission to amend his complaint in lieu of dismissal. While leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), leave is properly denied when the amendment would be futile. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Moreover, "[a] plaintiff need not be given leave to amend if [he] fails to specify [] to the district court . . . how amendment would cure the pleading deficiencies in [his] complaint." *Id.* at 505.[11] In requesting leave to amend, Stephens does not,

---

[10] Stephens's domain name is listed for sale on "trumpestates.com" for $400,000. TrumpEstates.com, *http://www.trumpestates.com* (last visited Aug. 30, 2016). It is also listed for sale on eBay.com for $21 million. Trump Estate com Domain Name Location Location Location, http://www.ebay.com/itm/TRUMP-ESTATES-COM-domain-name-Location-Location-Location-/131683961706?hash=item1ea8f9cb6a:g:OxMAAOSwNSxVBs4K (last visited Aug. 30, 2016); Maron Decl. Ex. 2 at Ex. T.

[11] Stephens, who is represented by counsel, erroneously requests application of a more liberal standard for leave to amend that is relevant only to *pro se* litigants. Pl. Mem. at 17-18 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Regardless the level of scrutiny, though, the transparent futility of amendment fuels denial of leave.

11

as the letter and spirit of Rule 7(b) would require of him, identify the factual allegations he intends to plead that would entitle him to relief permitting amendment, *see Love v. Premier Util. Servs., LLC*, No. 15 Civ. 5698 (ADS) (AYS), 2016 WL 2853532, at *7 (E.D.N.Y. May 13, 2016), nor does it appear that such facts exist. *See* Maron Decl. Ex. 3.

Stephens, most assuredly, would not be the first to bemoan that the entrepreneurial spirit embodied in his business model had been snuffed out by an entanglement of intense federal regulation. Since the first American progressive era heralded by the presidency of Theodore Roosevelt, the American body politic has embraced a network of intense regulation of business to protect pure food and drugs, the public health, the environment, workers, consumers, and, indeed, business itself. The Trump defendants are entitled to seek refuge in those federal regulations to blunt Stephens in his entrepreneurship and bar the legal remedies he would pursue to fend them off. That network of regulations makes crystal clear that, even in cyberspace, the TRUMP® mark is entitled to regulatory protection fair and square. It is inconceivable that Stephens could, as the silence of his papers emphasizes, plead any facts that would entitle him to co-opt the Trump name, that any words used by the Trump defendants to denounce his cybersquatting (in all of its forms) would be defamatory, or that seeking to block his use of the Trump domain name he registered would interfere with any of his legitimate business relations. As a consequence, leave to amend is not warranted and is denied.

## Conclusion

For the reasons explained above, the motion of the Trump defendants to dismiss is granted in its entirety, plaintiff's request for leave to amend the complaint is denied, and the complaint is dismissed with prejudice.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
September 6, 2016

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge